UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
 BPI LUX S.A.R.L.,

                    Plaintiff,

          - against –                        **MEMORANDUM AND ORDER**

BOARD OF MANAGERS OF THE SETAI             18 Civ. 1621 (NRB)
CONDOMINIUM RESIDENCE AT 40 BROAD
STREET and THE SETAI CONDOMINIUM
RESIDENCE AT 40 BROAD STREET,

                    Defendants.
-----------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

        Plaintiff BPI Lux S.a.r.l ("BPI") commenced this action
against defendants Board of Managers of the Setai Condominium
Residence at 40 Broad Street and the Setai Condominium Residence
at 40 Broad Street for infringement of its trademarks.
Plaintiff now moves for summary judgment on its claims for: (1)
trademark infringement of a registered mark in violation of 15
U.S.C. §§ 1114, 1116; and (2) false designation of origin in
violation of 15 U.S.C. § 1125(a).  Defendants cross-move for
summary judgment and request that, should their cross-motion be
denied, we also deny plaintiff's motion pursuant to Federal Rule
of Civil Procedure 56(d) because discovery is needed to
establish proof to oppose plaintiff's motion.  For the reasons
stated below, we grant plaintiff's motion and deny defendants'
cross-motion and request for additional discovery.

                              1

# FACTUAL BACKGROUND[1]

In November 2001, The Setai Group LLC ("Setai Group") registered the SETAI trademarks for use in real estate development and luxury hotels. Pl.'s 56.1 Stmt. ¶ 1, ECF No. 31.[2] The Setai Group used the trademarks at the Miami Setai Resort & Residences ("Miami Setai"), a condominium and hotel resort complex in Miami, Florida. Id. ¶ 2. In January 2006, the Setai Group entered into two agreements to license the SETAI trademarks for use in a project in lower Manhattan. Id. ¶ 3. The first agreement, between the Setai Group and 40 Broad LLC ("40 Broad"), licensed the trademarks for use in a condominium project at 40 Broad Street ("Condo License Agreement"). Id. ¶¶ 4-5. The second agreement, between the Setai Group and 40 Broad Commercial LLC ("40 Broad Commercial"), licensed the SETAI trademarks for use at a spa at the same location ("Spa License Agreement"). Id. ¶ 7-8.

Section 2.1 of the Condo License Agreement permitted 40 Broad to use the SETAI trademarks for the "development, operations, sale and marketing" of the condominium project. Id. ¶ 10; Pl.'s Ex. 3, ECF No. 33-3, § 2.1. In order to ensure that the project complied with the SETAI brand's standards ("Brand

---

[1] The following facts are taken from the parties' Local Rule 56.1 Statements, declarations, and exhibits. Our citations to the 56.1 statements also incorporate by reference the documents and testimony cited therein.
[2] Defendants' counsel failed to comply with the Court's Individual Rules of Practice by not reproducing each entry of plaintiff's 56.1 Statement in their counter-statement. Consequently, we provide parallel citations to both parties' 56.1 Statements only if the statement is disputed by the parties.

Standards"), Section 3.1 of the Condo License Agreement required 40 Broad to "develop, construct, sell, market and operate the Project in strict conformity with the Brand Standards." Pl.' 56.1 Stmt. ¶ 11; Pl.'s Ex. 3, § 3.1. 40 Broad's failure to operate the property pursuant to the Brand Standards would "constitute an Event of Default" that would allow the Setai Group to terminate the Agreement pursuant to "all rights and remedies set forth" in § 12 of the Agreement. Pl.'s 56.1 Stmt. ¶ 14; Pl.'s Ex. 3, § 3.1. In particular, the provision specified that upon termination, 40 Broad must "[c]ease using the Setai Intellectual Property, and return, remove or destroy" all materials containing the SETAI marks. Pl.' 56.1 Stmt. ¶ 16; Pl.'s Ex. 3, § 12.5.2.

Under the Condo License Agreement, 40 Broad was to assign "[the] Agreement and its rights, privileges and obligations hereunder to the Condominium Association," provided that the "Condominium Association" agree "to be bound by all of the terms and conditions of this Agreement." Pl.'s Ex. 3, § 13.4. The Agreement gave each unit owner "the right to use the SETAI Intellectual Property in accordance with [the] Agreement solely in connection with the ownership of their Units and for no business or commercial purpose whatsoever" without the necessity of any assignment. However, the unit owner's right to use the SETAI marks "shall not be deemed either an assignment or a

violation of this Agreement." Id. § 13.5. The Agreement also contained a merger clause and "supersede[d] any and all other understandings and agreements, either oral or in writing, between the parties with respect to the subject matter hereof and constitutes the sole and only agreement between the parties hereto with respect to the subject matter." Id. § 17.4.

In September 2010, the Setai Group initiated a lawsuit in the New York State Supreme Court, New York County, asserting a single claim for breach of the Condo License Agreement against 40 Broad. See Compl., Setai Group LLC v. 40 Broad LLC, et al., 651554/2010 (N.Y. Sup. Ct. Sep. 21, 2010). The Setai Group alleged that 40 Broad was failing to construct the building in accordance with the Brand Standards. Id. In January 2011, the parties reached an agreement ("2011 Settlement Agreement") that settled the lawsuit. See Pl.'s Ex. 6, ECF No. 33-6. Under the 2011 Settlement Agreement, the parties agreed to "release and discharge each other . . . from all actions, causes of actions, liabilities, claims and demands whatsoever, which either party had, now has or hereinafter may have against the other arising out of or relating to the [License Agreements] from the beginning of the world through and including the date of [the 2011 Settlement Agreement]." Id. ¶ 4. The Agreement also provided that 40 Broad "retain[ed] the right to use the SETAI Intellectual Property." Id. ¶ 5.

In February 2015, Setai Hotel Acquisition LLC acquired the Miami Setai and the SETAI intellectual property from the Setai Group.  Pl.'s 56.1 Stmt. ¶ 34.  The SETAI intellectual property was subsequently transferred to BPI and the Alexander von Furstenberg Living Trust, and then exclusively to BPI.  Id. ¶ 35.  Between 2015 and 2017, BPI submitted trademark applications and registered the SETAI trademarks to cover goods and services other than real estate development and luxury hotels.  See Pl.'s Ex. 2, ECF No. 33-2; Jun. 19, 2019 Oral Arg. Tr. 5:19–6:10.

After acquiring the intellectual property, BPI determined that the New York Setai condominium building and spa were not complying with the Brand Standards contained in the License Agreements.  Pl.'s 56.1 Stmt. ¶ 38.  BPI sent a "Notice to Cure" to 40 Broad and 40 Broad Commercial in September 2016.[3]  Id. ¶ 39.  40 Broad Commercial then initiated an action in the New York State Supreme Court, New York County, seeking to enjoin the termination of the License Agreements.  Id. ¶ 42.  BPI subsequently removed the action to the Southern District of New York.  See 40 Broad Commercial LLC c/o Zamir Equities v. BPI Lux S.a.r.l., No. 16-cv-7931 (VEC) ("2016 Litigation").

During discovery, the parties deposed: Robert Spiegelman, the director of BPI; Alex Furrer, the general manager of the

---

[3] Defendants assert that they cannot respond to this allegation because they "have not had an opportunity to engage in discovery."  Defs.' 56.1 Stmt. ¶ 39, ECF No. 41.

Miami Setai; Asher Zamir, the managing member of 40 Broad Commercial and manager of 40 Broad; Thomas Osborne, a representative for the Board of Managers; and Keith Allone, an employee for the managing agent of the New York Setai condominiums.[4]  Id. ¶ 46.  Mr. Furrer testified that he was "confused" when a guest at the Miami Setai asked him about the property's affiliation with the New York Setai.  Id. ¶ 50; Pl.'s Ex. 10, ECF No. 32-2, at 42:16-44:16.  Mr. Osborne testified that he had learned about the value of the SETAI brand because "[o]ther board members had mentioned that The Setai brand was important to them."  Pl.'s Ex. 12, ECF No. 32-4, at 9:25-13:6.

In October 2017, shortly before trial was scheduled to commence in the 2016 Litigation, BPI and 40 Broad agreed to settle.  Pl.'s 56.1 Stmt. ¶ 62.  They executed a formal settlement agreement ("2018 Settlement Agreement") in January

---

[4] Defendants claim that the depositions from the 2016 Litigation should not be considered, except for the depositions of Thomas Osborne and Keith Allone, who were then represented by defendants' counsel in the instant case. See Defs.' Mem. Law in Supp. of Defs.' Cross-Mot. for Summ. J. and in Opp. to Pl.'s Mot. for Summ. J. ("Defs.' Br."), ECF No. 40, at 9.  However, as plaintiff maintains, deposition testimony is not "excludable on summary judgment merely because it was taken in a different case." Highland CDO Opportunity Master Fund, LP v. Citibank, N.A., 270 F. Supp. 3d 716, 720 n.3 (S.D.N.Y. 2017) (Buchwald, J.); see also Alexander v. Casino Queen, Inc., 739 F.3d 972, 978 (7th Cir. 2014) ("The weight of authority is that depositions can be the equivalent of affidavits, and are therefore admissible at the summary judgment stage.").  To be used on summary judgment in a new case, depositions from another case need only satisfy Rule 56's requirements and become part of the record in the new case. Id.  According to plaintiff, the depositions from the 2016 Litigation were "based on the deponents' personal knowledge and set out facts that would have been admissible at trial, and the deponents were competent to testify on the matters of their depositions." Pl.'s Mem. of Law in Opp. to Defs.' Mot and in Further Supp. of Mot. Summ. J. ("Pl.'s Reply"), ECF No. 43, at 4.  Plaintiff also filed the deposition transcripts as attachments to its counsel's declaration. See ECF No. 32. Accordingly, we will consider the deposition transcripts.

2018.  See Pl.'s Ex. 14, ECF No. 32-6.  BPI agreed to pay a substantial sum to 40 Broad and 40 Broad Commercial.  Id. ¶ 2. In exchange, the 40 Broad parties were "permanently enjoined from any and all use of the Trademarks, in perpetuity . . ." Id. ¶ 3.  40 Broad further agreed to remove all SETAI signage and logos, destroy any remaining materials with the SETAI logo, and remove all online SETAI branding.  Id.

Under the 2018 Settlement Agreement, the Condo and Spa License Agreements were officially terminated.  Id. ¶ 5.  40 Broad and 40 Broad Commercial represented that they had "never assigned, transferred, sublicensed or otherwise granted any right to the Trademarks to the Setai Condominium Residences at 40 Broad Street or to any other person or entity" or had "never granted, pledged, assigned, hypothecated, or granted the Setai Condominium Residences at 40 Broad Street or any person or entity the right to use the term 'Setai.'"  Id. ¶ 6.  The 40 Broad parties also acknowledged "BPI's exclusive ownership of the Trademarks and BPI's exclusive right to use the Trademarks." Id. ¶ 8.  In addition, the 40 Broad parties agreed to inform defendants that they must immediately cease and desist from making any use of the Trademarks or the 'Setai' name."  Id. ¶ 9. However, defendants have continued to use the SETAI trademarks. See Pl.'s 56.1 Stmt. ¶ 74; Defs.' 56.1 Stmt. ¶ 74.

## PROCEDURAL HISTORY

BPI filed this lawsuit against defendants in February 2018. See ECF No. 1. The complaint contained three claims for: (1) trademark infringement of a registered mark in violation of 15 U.S.C. §§ 1114, 1116; (2) false designation of origin in violation of 15 U.S.C. § 1125(a); and (3) deceptive acts and practices in violation of New York General Business Law § 349. Defendants filed an answer to the complaint on April 13, 2018. See ECF No. 14. BPI sought leave to move for summary judgment on its first two claims before conducting any discovery in this action. See ECF No. 19. Defendants also sought leave to cross-move for summary judgment. See ECF No. 20. We granted both parties' requests. See ECF No. 25.

## DISCUSSION

Summary judgment is granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A motion for summary judgment can be brought "at any time," including before discovery. Fed. R. Civ. P. 56(b). "The moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the movant meets its burden, "the nonmoving party must come forward

with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts" and "may not rely on conclusory allegations or unsubstantiated speculation." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005).

"A fact is material when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (citations and internal quotation marks omitted). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997). "The same standard . . . applies when," as here, "the court is faced with cross-motions for summary judgment. Each party's motion must be reviewed on its own merits, and the Court must draw all reasonable inferences against the party whose motion is under consideration." Bell v. Pham, No. 09-cv-1699 (PAC) (RLE), 2011 WL 1142857, at *2 (S.D.N.Y. Mar. 24, 2011) (internal citation omitted).

## I.   Lanham Act Claims

BPI seeks summary judgment on two claims that it has brought under the Lanham Act: (1) a claim based on trademark infringement of a registered mark in violation of 15 U.S.C. §§ 1114, 1116; and (2) a claim based on false designation of origin in violation of 15 U.S.C. § 1125(a).

Both claims are examined under the same two-pronged analysis.  See Time, Inc. v. Petersen Publ'g Co. L.L.C., 173 F.3d 113, 117 (2d Cir. 1999) (noting that the same test is applicable to claims brought under § 1114 and § 1125(a)).  Under the first prong, a plaintiff "must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale . . . or advertising of goods or services, (5) without the plaintiff's consent."  1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400, 406-07 (2d Cir. 2005) (internal citations and quotation marks omitted).  Under the second prong, the plaintiff must also show that the "defendant's use of that mark is likely to cause confusion . . . as to the affiliation, connection, or association of [the defendant] with [the plaintiff], or as to the origin sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [the plaintiff]."  Id. at 407 (alterations original).

In the instant case, the parties are in dispute regarding the fifth element of the first prong – use without consent – and the second prong. We thus focus our discussion on those issues.

**A.    Use Without Consent**

Plaintiff asserts that defendants do not have any license or other contractual right to use the SETAI trademarks. According to plaintiff, 40 Broad obtained a license to use the trademarks and agreed to later assign the license to the "Condominium Association." See Pl.'s Ex. 3, § 13.4. Under § 13.4 of the Condo License Agreement, the "Condominium Association" was required to "execute and deliver documentation . . . agreeing to be bound by all of the terms and conditions of the Agreement." Id. Plaintiff argues that, since there was no assignment from 40 Broad to defendants prior to the 2018 Settlement Agreement that terminated the license, defendants cannot use the SETAI trademarks.

In response, defendants advance two arguments: (1) § 13.4 does not apply to them because they are an unincorporated association and are therefore "not the 'condominium association' referenced at § 13.4 of the Agreement," Defs.' Br., at 14-15; and (2) a written assignment was not needed to use the SETAI trademarks because § 13.5 of the Agreement authorized the unit owners to use the trademarks in connection with their apartments, and defendants in turn are authorized to use the

trademarks as the individual owners' agent, id. at 10-14. According to defendants, the plain language of the Condo License Agreement makes clear that each purchaser has the right to use the SETAI brand without any additional documentation as long as the brand is not used for a business or commercial purpose. This right, defendants argue, is a "common element"[5] of the condominium building to which the unit owners hold title. Since the Board of Managers in turn has the exclusive right to act in connection with the common elements, it is the Board, acting on behalf of the unit owners, that can exercise the right to use the brand. See Defs.' Br., at 13 (citing Jerdonek v. 41 West 72nd LLC, 143 A.D.3d 43, 48-50 (N.Y. App. Div. 2016).

Defendants' arguments are meritless. First, the "Condominium Association" was defined in § 6.5.4 of the Condo License Agreement, and its status as a potential assignee of the trademark license was not dependent upon whether it was an unincorporated entity.[6] See Pl.'s Ex. 3, §§ 6.5.4, 13.4. Second, even if defendants are not the "Condominium Association" referenced in § 13.4, it is undisputed that 40 Broad failed to assign the license to another entity. Therefore, the license to

---

[5] Defendants define the term "common element" to include "the portions of the building which are not occupied and used by the individual unit owners." Defs.' Br., at 12.

[6] In addition, defendants' own by-laws confirm that the Board of Managers was required to enter into a written agreement "pursuant to which the Condominium may use certain Setai trademarks and must adhere to certain brand standards promulgated by Setai Licensor." Pl.'s Ex. 14, ECF No. 32-7, § 6.6.2(d).

use the SETAI trademarks, which had been held by 40 Broad, and the individual unit owners' right to use the SETAI brand "solely in connection with the ownership of their Units and for no business or commercial purpose whatsoever" under § 13.5 were terminated by the 2018 Settlement Agreement.

Further discovery is not needed to ascertain the meaning of the Condo License Agreement because the text of the Agreement unambiguously resolves the issue of defendants' use of the SETAI trademarks without consent. See W.W.W. Assoc. v. Giancontieri, 77 N.Y.2d 157, 162 (1990) ("Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing."). Extrinsic evidence is also not appropriate in this case because the Agreement contained a merger clause and "supersede[d] any and all other understandings and agreements, either oral or in writing . . ." Pl.'s Ex. 3, § 17.4; see also MPEG LA, LLC v. Toshiba Am. Info. Sys., Inc., 161 A.D.3d 426, 427 (N.Y. App. Div. 2018).

**B.  Likelihood of Confusion**

To prevail in its trademark infringement action under the Lanham Act, BPI must prove "a probability of confusion, not a mere possibility," affecting "numerous ordinary prudent purchasers." Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1077 (2d Cir. 1993). "Likelihood of confusion

includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection, or identification." Guinness United Distillers & Vintners B.V. v. Anheuser-Bush, Inc., No. 02-cv-861 (LMM), 2002 WL 1543817, at *2 (S.D.N.Y. 2002) (citing McDonald's Corp. v. McBagel's, Inc., 649 F. Supp. 1268, 1273 (S.D.N.Y. 1986)). "In order to be confused, a consumer need not believe that the owner of the mark actually produced the item and placed it on the market. The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement." Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 204-05 (2d Cir. 1979) (internal citations omitted).

As a threshold matter, the likelihood of confusion is "obvious" when a "defendant's use of a mark [is] imitative of plaintiff's registered mark." Venetianaire Corp. of Am. v. A & P Imp. Co., 429 F.2d 1079, 1081 (2d Cir. 1970); see also Oral-B Labs., Inc. v. Mi-Lor Corp., 810 F.2d 20, 23 (2d Cir. 1987) ("Evidence of conscious imitation is pertinent because the law presumes that an intended similarity is likely to cause confusion."). Although the parties dispute whether defendants are licensed to use the SETAI trademarks, they do not dispute that defendants have continued to use plaintiff's trademarks without any attempt to create their own. See Pl.'s 56.1 Stmt. ¶ 74; Oral Arg. Tr. 6:22-7:2. Therefore, as a matter of law,

defendants' use of the trademarks "is likely to cause confusion, or to cause mistake, or to deceive."[7] 15 U.S.C. § 1114.

An application of the eight-factored test identified in the seminal case of Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2d Cir. 1961), also supports our conclusion. The factors include: "(1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market." Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 384 (2d Cir. 2005) (citing Polaroid, 287 F.2d 492 (2d Cir. 1961)). We consider each factor in turn.

---

[7] Defendants rely on an unrelated litigation involving the Miami Setai to support its contention that there is no likelihood of confusion in this case. Defs.' Br., at 17-18. In Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc. ("Florida Action"), No. 16-cv-21296 (RNS), 2017 WL 3503371 (S.D. Fla. Aug. 15, 2017), Setai Hotel Acquisition sued Miami Beach Luxury Rentals, a company that managed private residential condominiums. Id. at *3. Setai Hotel Acquisition alleged that Miami Beach Luxury Rentals engaged in trademark infringement by using the SETAI brand to promote short term rentals of condominium units at the Miami Setai. See id. at *9. Both parties sought summary judgment, but the district court denied the motions. See id. at *18. The court found that, based on the record before it, neither party could not establish a likelihood of confusion. Id. This ruling, as plaintiff maintains, is in no way binding on this Court and is readily distinguishable both on the facts and the law. Specifically, the factors utilized by the Florida court to evaluate the likelihood of confusion issue are different. See id. at *10 (citing Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 122 F.3d 1379, 1382 (11th Cir. 1997)).

### 1. Strength of the Mark

"[T]he strength of a mark depends ultimately on its distinctiveness, or its 'origin-indicating' quality, in the eyes of the purchasing public." McGregor-Doniger Inc. v. Drizzle, Inc., 599 F.2d 1126, 1131-32 (2d Cir. 1979), overruled on other grounds by Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1043-44 (2d Cir. 1992). As plaintiff points out, the word "Setai" has no meaning in the English language and "does not communicate any information about the product either directly or by suggestion." Star Industries, 412 F.3d at 385 (2d Cir. 2005). Defendants' argument that the word "Setai" should not get trademark protection because it means "household" in Japanese, see Defs.' Reply, at 3-4, is meritless because there is no evidence in the record that the word "Setai" is a generic term that refers to luxury condominium buildings, hotel resorts, or any other type of goods or services. See Simon & Schuster, Inc. v. Dove Audio, Inc., 970 F. Supp. 279, 293 (S.D.N.Y. 1997) (finding that a mark that did not describe or refer to the genus of goods being sold was not generic). Therefore, the first factor weighs in favor of plaintiff.

### 2. Similarity of the Marks

"Courts examine the similarity between the marks and the contexts in which they appear to assess the likelihood that consumers will be confused by the competing marks." Perfect

<u>Pearl Co. v. Majestic Pearl & Stone, Inc.</u>, 887 F. Supp. 2d 519, 536 (S.D.N.Y. 2012) (citing <u>Gruner + Jahr</u>, 991 F.2d at 1078). It is undisputed that defendants are using plaintiff's trademarks without any change or alteration, so the second factor weighs heavily in favor of plaintiff.[8]

### 3. Proximity and Competitiveness of the Marks

In assessing the third factor, courts examine "the nature of the products themselves and the structure of the relevant market." <u>Vitarroz v. Borden, Inc.</u>, 644 F.2d 960, 967 (2d Cir.1981). This factor "has two elements, market proximity and geographic proximity. Market proximity asks whether the two products are in related areas of commerce and geographic proximity looks to the geographic separation of the products." <u>Brennan's, Inc. v. Brennan's Rest., L.L.C.</u>, 360 F.3d 125, 134 (2d Cir. 2004). Courts use both elements "to determine whether the two products have an overlapping client base that creates a potential for confusion." <u>Id.</u>

In the instant case, the condominiums at the Miami Setai and the condominiums at 40 Broad both offer luxury housing. However, the two properties are geographically distant, with more than 1,200 miles separating them. In the luxury

---

[8] Defendants argue that its use is not similar to defendants' use at the Miami Setai because the Miami property is a beachfront hotel resort. Defs.' Br., at 17. However, that argument is meritless because the Miami property also has individually owned condominium units. In addition, defendants' citation to Mr. Furrer's testimony in the Florida action, <u>see</u> Defs.' Br., at 17-18, is not enlightening on this issue.

condominium industry, especially when Miami and New York may attract different types of clients, "physical separation seems particularly significant to the inquiry into consumer confusion." Brennan's, 360 F.3d at 134. Although plaintiff asserts that its brand has an international reputation, there is no undisputed evidence of "extensive advertising or evidence of strong reputation in the distant market." Id. Therefore, the third factor weighs in favor of defendants.

### 4. Bridging the Gap

The fourth factor "is designed to protect the senior user's interest in being able to enter a related field at some future time." W.W.W. Pharm. Co. v. Gillette Co., 984 F.2d 567, 574 (2d Cir. 1993). The SETAI brand has already expanded to Tel Aviv, Pl.'s 56.1 Stmt. ¶ 52, and plaintiff asserts that it "may expand in the future to other luxury markets such as New York." Pl.'s Reply, at 11; see also Guthrie Healthcare, 826 F.3d at 45 (holding that future geographic expansion can amount to "bridging the gap"). We thus find that the fourth factor weighs in favor of plaintiff.

### 5. Actual Consumer Confusion

"It is self-evident that the existence of actual consumer confusion indicates a likelihood of consumer confusion." Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 151 (2d Cir. 2003). Plaintiff points to Mr. Furrer's deposition, in which he

testified that a guest at the Miami Setai had asked questions about the relationship between the New York Setai building and the Miami Setai as early as 2012. Pl.'s Ex. 10, at 42:16-44:16. Defendants argue that Mr. Furrer's testimony is inadmissible hearsay because his recollection of the conversation that he had with a guest at the Miami Setai "is nothing more than something he overheard from another person." Defs.' Br., at 15-16.

However, Mr. Furrer testified that he was "confused" when the guest inquired if "it's same ownership, if it's affiliated, what the relationship is" between the Miami Setai and "a Setai residence and spa in New York City at 40 Broad Street."[9] Pl.'s Ex. 10, at 42:16-44:16. Federal Rule of Evidence 803(3) allows statements, otherwise excluded as hearsay, to be received to show the declarant's then-existing state of mind, see Rush Indus., Inc. v. Garnier LLC, 309 F. App'x 431, 432 (2d Cir. 2009), and we find Mr. Furrer's testimony to be admissible evidence that shows actual consumer confusion. Although plaintiff presents only one example of actual confusion, "[e]vidence of actual confusion regarding affiliation or sponsorship is . . . entirely relevant to the ultimate

---

[9] Defendants also assert that Furrer's testimony regarding actual confusion was not credible because the guest could have been referring to the Setai Fifth Avenue, a hotel in New York City that allegedly used the Setai name from 2010 to 2012. Defs.' Br., at 16-17. However, the deposition transcript does not provide any basis to support this assertion. Mr. Furrer recounted his confusion after being asked how he "learned about there being a Setai residence and spa in New York City at 40 Broad Street." Pl.'s Ex. 10, at 42:16-19.

likelihood-of-confusion inquiry." <u>Morningside Grp. Ltd. v.</u> <u>Morningside Capital Grp., L.L.C.</u>, 182 F.3d 133, 141 (2d Cir. 1999). Therefore, the fifth factor weighs in plaintiff's favor.

### 6. Bad Faith

This factor considers "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." <u>Gillette</u>, 984 F.2d at 575. Mr. Osborne testified that he had learned about the value of the SETAI brand because "[o]ther board members had mentioned that The Setai brand was important to them." Pl.'s Ex. 12, at 9:25-13:6. Based on this testimony, defendants are presumably using plaintiff's SETAI trademarks to capitalize on the SETAI brand's reputation, and we find that the sixth factor weighs in plaintiff's favor.

### 7. Quality of the Products

"If an infringing product is of inferior quality, the senior user is entitled to protect the good reputation associated with his mark from the possibility of being tarnished by inferior merchandise of the junior user." <u>Gillette</u>, 984 F.2d at 575 (internal citation and quotation marks omitted). Although it is undisputed that defendants are not following the Brand Standards set forth by plaintiff, there is no evidence in the record about the quality or maintenance of the New York

condominium building.  Therefore, based on the factual record, we cannot determine whether this factor weighs in favor of either party.

### 8.  Consumer Sophistication

The theory of this factor is that "the more sophisticated the purchaser, the less likely he or she will be confused by the presence of similar marks in the marketplace." Savin Corp. v. Savin Grp., 391 F.3d 439, 461 (2d Cir. 2004).  There is no evidence in the record regarding the level of sophistication possessed by the SETAI brand's potential customers.  However, "where the products are identical and the marks are identical, the sophistication of buyers cannot be relied on to prevent confusion." McGregor-Doniger Inc. v. Drizzle Inc., 599 F.2d 1126, 1137 (2d Cir. 1979).  Since both parties use the marks for residential condominium buildings, this factor does not mitigate the likelihood of confusion and weighs in plaintiff's favor.

### 9.  Balancing of Factors

Our analysis of the Polaroid test is not meant to be mechanical.  Instead, it properly "focus[es] on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." Star Indus., 412 F.3d at 384. Since all but two Polaroid factors weigh in favor of plaintiff, we find that defendants' use of the trademarks is likely to cause confusion.

## II.  Defendants' Defenses

Defendants raise two defenses to plaintiff's trademark infringement claims.[10]  First, defendants assert that plaintiff abandoned the trademarks by failing to police the licensee's use of the trademarks and thus engaging in naked licensing.[11] Second, defendants argue that plaintiff acquiesced to their use of the trademarks.  We consider each defense in turn.

### A.  Abandonment

"To establish the defense of abandonment, it is necessary to show either the owner's intent to abandon the mark, or a course of conduct on the part of the owner causing the mark to become generic or lose its significance as a mark."  Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 110 (2d Cir. 2000) (citing Defiance Button Machine Co. v. C & C Metal Products Corp., 759 F.2d 1053, 1059 (2d Cir. 1985), cert. denied, 474 U.S. 844 (1985)).  "Where a licensor retains no control over the nature or quality of goods or services provided

_____

[10] Defendants also argue that they did not need a written assignment to use plaintiff's trademarks.  That argument has already been addressed. See Part I.A.

[11] Defendants' briefs suggest that they are also asserting a defense of abandonment through non-use.  See Defs.' Br., at 19 ("Non-use for three consecutive years is prima facie evidence of abandonment.").  However, they do not point to any evidence that suggests plaintiff's non-use of the SETAI trademarks.  Rather, defendants focus on plaintiff's alleged failure to police the trademarks, see Defs.' Br., at 19-21, which suggests that defendants have improperly conflated the legal doctrines of non-use abandonment and naked license abandonment.  Plaintiff argues that defendants have forfeited the naked license abandonment defense because "[t]he words 'naked license' are never used" in defendants' briefs.  Pl.'s Br., at 18. However, as defendants discuss plaintiff's alleged failure to police the marks in their briefs, we address their arguments on naked licensing.

in connection with the mark . . . such naked licensing will result in abandonment." *Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194, 212 (S.D.N.Y. 2007) (citing *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 367 (2d Cir. 1959)). The central question is whether "the licensees' operations are policed adequately to guarantee the quality of products sold [or the services promised] under the mark." *General Motors Corp. v. Gibson Chem. & Oil Corp.*, 786 F.2d 105, 110 (2d Cir. 1986). Abandonment of a mark "constitutes a forfeiture of a property right," so it "must be proven by clear and convincing evidence." *Empresa Cubana Del Tabaco v. Culbro Corp.*, 213 F.R.D. 151, 156 (S.D.N.Y. 2003); *see also* *Warner Bros., Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 334 (2d Cir. 1983) (holding that the movant must meet a "high burden of proof" to prove abandonment through failure to police).

In the instant case, undisputed evidence more than sufficiently demonstrates that plaintiff adequately policed 40 Broad's use of the SETAI trademarks. Section 3.1 of the Condo License Agreement required 40 Broad to "develop, construct, sell, market and operate the Project in strict conformity with the Brand Standards," Pl.'s Ex. 3, § 3.1, and plaintiff and its predecessor sent notices and brought lawsuits in 2011 and 2016 against 40 Broad when 40 Broad failed to comply with the Brand

Standards.[12] Defendants assert that Mr. Furrer's testimony in the Florida action shows that the trademarks were not policed at all until early 2016. However, Mr. Furrer simply stated, "As you see we are trying to actively police it since about one and a half years." Defs.' Ex. L, at 299. This scant statement does not undermine the undisputed evidence of active policing.[13]

Furthermore, defendants have not shown that the SETAI trademarks became a "generic name for goods or services" or "los[t] [their] significance as a mark." 15 U.S.C. § 1127; see also Hermes, 219 F.3d at 110 (rejecting the defendant's defense of abandonment through failure to police because the defendant was "far from establishing that Hermes' designs have become generic"). In general, "a term or phrase is generic when it is commonly used to depict a genus or type of product, rather than a particular product." Murphy Door Bed Co. v. Interior Sleep Sys., Inc., 874 F.2d 95, 100 (2d Cir. 1989) (citing Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir.

_____

[12] Defendants' argument that plaintiff failed to police defendants' use of the trademarks fares no better. First, by arguing that plaintiff failed to police their use of the trademarks, defendants are effectively admitting that they violated the Brand Standards because, without any violation of the Brand Standards, plaintiff does not have any basis to send a notice to cure or commence a legal action against defendants. Furthermore, until 40 Broad's license was terminated by the 2018 Settlement Agreement, plaintiff could only police the license against 40 Broad, which it did.
[13] Defendants also alleges that the existence of a hotel named the Setai Fifth Avenue in New York from 2010 to 2012 that did not have any affiliation with the Miami Setai demonstrates that plaintiff abandoned the SETAI trademarks in New York. See Defs.' Br., at 16-17. However, not only is the allegation conclusory and unsubstantiated, but it also has nothing to do with defendants' argument that plaintiff allegedly failed to police the licensee's (i.e., 40 Broad's) use of the SETAI trademarks.

1976)). "[A] mark is not generic merely because it has some significance to the public as an indication of the nature or class of an article. In order to become generic, the principal significance of the word must be its indication of the nature or class of an article, rather than an indication of its origin." King-Seeley Thermos Co. v. Aladdin Indus., Inc., 321 F.2d 577, 580 (2d Cir.1963). Defendants do not adduce any evidence that the word "Setai" has become a generic term to refer to luxury condominiums or hotel resorts in the United States. In fact, defendants admitted at oral argument that they could not show that the SETAI trademarks became generic. See Tr. 32:11-33:1.

Since we find defendants' defense of abandonment to be unavailing, we do not address plaintiff's argument regarding licensee estoppel. In addition, since plaintiff's request for additional discovery about BPI's and its predecessors' enforcement of the Brand Standards will not create a genuine issue of fact regarding whether the SETAI trademarks were adequately policed or became generic, we deny the request. See Smith v. City of New York, 697 F. App'x 88, 90 (2d Cir. 2017).

## B.  Acquiescence

Acquiescence "requires proof of three elements: (1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not

excusable; and (3) the delay caused the defendant undue prejudice." <u>Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.</u>, 294 F.3d 383, 395 (2d Cir. 2002).

According to defendants, the 2011 Settlement Agreement had a provision in which the Setai Group and 40 Broad "agreed to a settlement of all claims . . . including, but not limited to, those claims raised or which would have been raised in the Supreme Court action." Pl.'s Ex. 6, at 2. Defendants rely on <u>Total Control Apparel, Inc. v. DMD Int'l Imports, LLC</u>, 409 F. Supp. 2d 403 (S.D.N.Y. 2006), in which the court held that a settlement agreement that "purported to settle all claims" between a plaintiff and a defendant was "an implicit, if not an explicit, assurance that [the plaintiff] would not assert its rights to the trademark against [the defendant]." <u>Id.</u> at 409.

However, <u>Total Control</u> is inapposite. In arguing that plaintiff agreed to settle all of its claims, including those arising in the future, defendants conveniently leaves out a provision in the Agreement that the Setai Group and 40 Broad agreed to "release and discharge each other" from "all actions, causes of actions, liabilities, obligations, claims and demands whatsoever . . . <u>from the beginning of the world through and including the date of this Agreement</u>." Pl.'s Ex. 6, ¶ 4 (emphasis added). Defendants' infringement of plaintiff's trademarks took place more than seven years after the 2011

Settlement Agreement had been reached. Unlike in Total Control,
in which the agreement "purported to settle all claims" between
the parties, 409 F. Supp. 2d at 409 (emphasis added), the 2011
Agreement did not apply to future potential claims against
defendants. See, e.g., HSBC Bank, USA v. Infinity Auto Glass
Distributors, Inc., 811 N.Y.S.2d 829, 830 (N.Y. App. Div. 2006)
(holding that a settlement agreement provision that released
"any and all claims [a party] raised or could have raised up
through the date of [the] Settlement Agreement" did not, as a
matter of law, apply to any future potential claims).

Furthermore, the 2011 Agreement did not contain a release
between the Setai Group and defendants, who were not parties to
the Agreement. Defendants cannot argue that they are third-
party beneficiaries of the Agreement because the Agreement does
not "clearly evidence[] an intent to permit enforcement by"
defendants. Fourth Ocean Putnam Corp. v. Interstate Wrecking
Co., 485 N.E.2d 208, 212 (1985). Defendants argue, based on a
provision in 40 Broad's Declaration of the Condominium that they
are "the successor in interest to the rights of" 40 Broad.
Defs.' Br., at 22. However, the provision reads: "The rights .
. . of Sponsor . . . as set forth herein shall inure to the
benefit of and be binding upon any successor or assign of
Sponsor or its designee or, with the consent of Sponsor . . .
any transferee of some or all then Unsold Residential Units."

Defs.' Ex. P, ECF No. 39-16, at 23 (emphasis added). As plaintiff maintains, there is no evidence that: (1) 40 Broad provided consent or assigned its rights to defendants; or (2) defendants are successors in interest to 40 Broad.

Finally, no additional discovery is needed to ascertain the meaning of the 2011 Settlement Agreement because the Agreement stated unambiguously on its face that it was a release of claims only between the Setai Group and 40 Broad "from the beginning of the world through and including the date of this Agreement." Pl.'s Ex. 6, ¶ 4. As a result, we do not need extrinsic or parol evidence to decipher the terms of the 2011 Settlement Agreement. See Giancontieri, 77 N.Y.2d at 162.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted, and defendants' cross-motion and request for additional discovery under Rule 56(d) are denied. The Clerk of Court is respectfully directed to terminate the pending motions listed at docket entries 29, 37, 38, and 49.

The parties are directed to appear for a status conference on August 19, 2019 at 2:30 P.M. at the United States Court House, 500 Pearl Street, New York, New York, in Courtroom 21A.

**SO ORDERED.**

Dated: New York, New York
July _16_, 2019

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

29